UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ADALBERTO SANDOVAL LARA,                                            Petitioner,

v.                                                      Civil Action No. 3:26-cv-190-DJH

MARKWAYNE MULLIN, Secretary,
Department of Homeland Security et al.,                          Respondents.[1]

\* \* \* \* \*

**<u>MEMORANDUM AND ORDER</u>**

Petitioner Adalberto Sandoval Lara, a noncitizen resident of Kentucky currently detained

in the Western District of Kentucky, seeks a writ of habeas corpus pending his removal

proceedings. He alleges that his detention by immigration authorities violates the Immigration

and Nationality Act and the Due Process Clause of the Fifth Amendment. (Docket No. 1) The

parties agreed to forgo a show-cause hearing given the absence of a material factual dispute (*see*

D.N. 3), and they have submitted briefing setting out their respective legal arguments (D.N. 6;

D.N. 7). After careful consideration, the Court will grant Sandoval Lara's petition for the reasons

explained below.

**I.**

Sandoval Lara is a native and citizen of Mexico. (D.N. 1, PageID.5 ¶ 16; D.N. 6-1,

PageID.124) He entered the United States "without inspection in or around 2005 and has resided

continuously in [the United States] for approximately twenty years, primarily in Kentucky."

(D.N. 1, PageID.5 ¶ 17) Sandoval Lara states that he "has built a stable life rooted in family, work,

---

[1] The petition names Kristi Noem as the Secretary of the Department of Homeland Security.
(Docket No. 1, PageID.4 ¶ 14) Pursuant to Federal Rule of Civil Procedure 25(d), the current
Secretary, Markwayne Mullin, has been automatically substituted as the respondent. The Court
will order that the docket be modified accordingly.

and community" in Kentucky. (*Id.*) Sandoval Lara is married to a U.S. citizen. (*Id.* ¶ 18) In 2007, Sandoval Lara was charged with speeding, failing to register transfer of a motor vehicle, and failing to maintain required insurance. (*Id.*, PageID.6 ¶ 22; *see* D.N. 1-2, PageID.92) Sandoval Lara paid a fine for the speeding violation and was placed on unsupervised probation for two years as to the insurance-related charge. (D.N. 1-2, PageID.92) The failure-to-register charge was dismissed. (*Id.*)

On March 2, 2026, Louisville Metro Police officers arrested Sandoval Lara and charged him with operating a vehicle under the influence, careless driving, operating a vehicle without a license, failure to use a signal, and failure to produce an insurance card. (D.N. 1-2, PageID.95) Those charges remain pending. (*See id.*) Federal immigration authorities lodged an immigration detainer and took Sandoval Lara into custody on March 2, 2026. (D.N. 6-1, PageID.125) Sandoval Lara was placed in removal proceedings via a Notice to Appear dated March 2, 2026, which designated him as "an alien present in the United States who has not been admitted or paroled." (D.N. 1-1, PageID.17)

On March 11, 2026, and March 13, 2026, an immigration judge denied Sandoval Lara's requests for a bond redetermination.[2] In both orders, the immigration judge stated that "[b]ased on the plain language of section 235(b)(2)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1225(b)(2)(A) (2018)," he "lack[ed] authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." (D.N. 1-3, PageID.98; D.N. 1-4, PageID.100) The immigration judge further stated in both orders that "[i]n the alternative and should a reviewing body find that the Court has jurisdiction to hear the bond request, the Court

---

[2] For individuals arrested under § 1226(a), an immigration officer makes an initial custody determination; the noncitizen may then request a custody redetermination (via a bond hearing) before an immigration judge. *Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920, at *5 (W.D. Ky. Nov. 4, 2025) (citations omitted).

would deny the bond as Respondent is a danger and in the alternative a flight risk." (D.N. 1-3, PageID.98; D.N. 1-4, PageID.100)  The immigration judge did not explain this finding in either order.    (*See* D.N. 1-3, PageID.98; D.N. 1-4, PageID.100; *see also* D.N. 1-2, PageID.23–96 (Sandoval Lara's motion for a bond redetermination hearing and supporting evidence))  Sandoval Lara remains detained at the Oldham County Detention Center in La Grange, Kentucky.  (D.N. 1, PageID.2 ¶ 2; D.N. 1-1, PageID.21)

Sandoval Lara seeks a writ of habeas corpus against Oldham County Jailer Jeff Tindall, Chicago U.S. Immigration and Customs Enforcement (ICE) Field Office Director Samuel Olson, the Department of Homeland Security Secretary, and the U.S. Attorney General.  (D.N. 1, PageID.4–5 ¶¶ 12–15)  Sandoval Lara alleges that his detention violates the Immigration and Nationality Act, 8 U.S.C. §§ 1225–1226, and due process under the Fifth Amendment.  (*See id.*, PageID.11–15 ¶¶ 44–65)  Sandoval Lara asks the Court to order his immediate release or, in the alternative, "an individualized bond hearing before a neutral decisionmaker."  (*Id.*, PageID.15)  Respondents argue that (1) pursuant to 8 U.S.C. § 1226(e), the Court lacks jurisdiction to "review the immigration judge's discretionary decision" to deny bond; (2) Sandoval Lara should exhaust administrative remedies by appealing the immigration judge's decision; (3) Sandoval Lara is an "arriving alien" subject to mandatory detention under 8 U.S.C. § 1225; and (4) Sandoval Lara's detention does not violate due process under § 1225 or § 1226.  (D.N. 6, PageID.115; *see id.*, PageID.113–22)

## II.

### A.    Jurisdiction

Respondents argue that Sandoval Lara's petition challenges the immigration judge's decision to deny bond and that the Court therefore lacks jurisdiction to consider it.  (*See id.*,

PageID.115–17)  Sandoval Lara maintains that his petition is reviewable, asserting that it "raises statutory and constitutional challenges, not a request to reweigh bond factors."   (D.N. 7, PageID.198)

> Pursuant to 8 U.S.C. § 1226(e),
>
> [t]he Attorney General's discretionary judgment regarding the application of [8 U.S.C. § 1226] shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e).  Thus, "district courts do not have jurisdiction to review discretionary decisions made by an [immigration judge] regarding bond."  *Marroquin v. Noem*, No. 26-45-DLB, 2026 WL 575222, at *3 (E.D. Ky. Mar. 2, 2026) (quoting *Fuentes v. Lyons*, 808 F. Supp. 3d 733, 737 (S.D. Tex. 2025)); *see Nielsen v. Preap*, 586 U.S. 392, 401 (2019).  But § 1226(e) "does not block lawsuits over 'the extent of the [g]overnment's detention authority under the statutory framework as a whole.'"  *Nielsen*, 586 U.S. at 401 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 295–96 (2018) (internal quotation marks omitted)); *see also id.* ("Respondents' argument is not that the [g]overnment exercised its statutory authority in an unreasonable fashion.  Instead, they dispute the extent of the statutory authority that the [g]overnment claims.").

Here, Count Three of the petition alleges "[s]tatutory [v]iolation of . . . 8 U.S.C. § 1226(a)"—specifically, that the immigration judge's bond determination "effectively nullified § 1226(a)'s bond authority and treated [Sandoval Lara] as subject to mandatory detention, despite his posture as a resident in [standard removal] proceedings" and that the immigration judge "did not acknowledge or apply § 1226(a)'s bond framework, did not analyze the [relevant] factors [of danger and risk of flight pursuant to Board of Immigration Appeals (BIA) caselaw], and did not consider setting any bond amount."  (D.N. 1, PageID.14 ¶¶ 62–63)  To the extent the immigration judge made a bond determination by concluding that Sandoval Lara "is a danger and in the

4

alternative a flight risk" (D.N. 1-4, PageID.100), Sandoval Lara challenges that determination by alleging that the immigration judge did not "explain[] how a single, recent, non-injury DUI charge and a decades-old traffic offense could justify a finding of dangerousness." (D.N. 1, PageID.8 ¶ 32) Thus, Count Three challenges the immigration judge's weighing of the evidence to the extent the immigration judge made a bond determination. The Court therefore lacks jurisdiction as to that claim. *See Marroquin*, 2026 WL 575222, at *4 (concluding that § 1226(e) barred jurisdiction where petitioner argued that immigration judge "erred in weighing the evidence" during bond hearing).

Count One of the petition, in contrast, asserts that Sandoval Lara's "detention is properly governed by 8 U.S.C. § 1226(a)" and that Respondents' "unilateral designation of [Sandoval Lara] as detained under § 1225(b)(2)(A), and the Immigration Judge's . . . [disclaimer of] . . . jurisdiction, are contrary to the statute and exceed Respondents' lawful authority." (D.N. 1, PageID.11 ¶¶ 46–47) Thus, Count One "dispute[s] the extent of the statutory authority that the [g]overnment claims" and does not strip the Court of jurisdiction as to that count. *Nielsen*, 586 U.S. at 401. Similarly, Count Two alleges a due-process violation on the ground that Sandoval Lara "has not received a meaningful, individualized bond hearing during [his] confinement" and that his "civil detention . . . without a demonstrated necessity based on danger or flight risk[] is arbitrary, punitive in effect, and unconstitutional." (D.N. 1, PageID.13 ¶¶ 55–56) The Court likewise has jurisdiction as to the second count because it does not involve a "discretionary decision[] about the application of § 1226." *Nielsen*, 586 U.S. at 401 (internal quotation marks and citation omitted); *see Soto-Medina v. Lynch*, No. 1:25-cv-1704, 2026 WL 161002, at *3 (W.D. Mich. Jan. 21, 2026) ("Section 1226(e) does not deprive the Court of jurisdiction to review a due

process challenge." (collecting cases)).  Therefore, the Court may consider Counts One and Two of the petition.  *Nielsen*, 586 U.S. at 401.

**B.**     **Exhaustion**

Respondents argue that Sandoval Lara should exhaust administrative remedies by appealing the immigration judge's second bond decision to the BIA.[3]  (*See* D.N. 6, PageID.118–20)  Sandoval Lara argues that an appeal would be "inadequate, futile, or would merely prolong" his detention and that the Court thus should not require exhaustion.  (D.N. 7, PageID.201)

The Court previously waived exhaustion requirements for a similarly situated habeas petitioner in *Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920 (W.D. Ky. Nov. 4, 2025).  Applying the three-factor test set out in *United States v. California Care Corp.*, 709 F.2d 1241 (9th Cir. 1983), the Court reasoned that (1) the legal question of whether § 1225 or § 1226 applies "does not require agency consideration"; (2) waiver would not "encourage the deliberate bypass of administrative review"; and (3) administrative review is unlikely to render judicial review unnecessary because "Respondents have clearly indicated their position that § 1225 authorizes [the petitioner's] detention."[4]  2025 WL 3083920 at *4.  In *Alonso*, the immigration judge had determined that he lacked jurisdiction to hear the petitioner's bond request; the petitioner did not

---

[3] Respondents' argument as to exhaustion focuses on the immigration judge's second bond decision.  (*See* D.N. 6, PageID.118)  In any event, Respondents filed their response brief on the deadline for Sandoval Lara to appeal the immigration judge's first bond decision (*see* D.N. 1-3, PageID.99), and the record does not reflect that Sandoval Lara appealed that determination.  (*See generally* D.N. 1; D.N. 7)

[4] Under this test, the Court requires exhaustion where "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review."  *Alonso*, 2025 WL 3083920, at *3 (citing *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778 (E.D. Mich. 2025)).

appeal the immigration judge's decision to the BIA; and the appeal deadline had passed when the Court considered the habeas petition.  *See id.* at *1, *3.

Likewise, the immigration judge here stated in his second bond decision that he "lack[ed] authority to hear bond requests."  (D.N. 1-4, PageID.100)  Sandoval Lara apparently has not appealed that decision (*see* D.N. 7, PageID.201), and the appeal deadline has passed.  (*See* D.N. 1-4, PageID.101)  Moreover, a due process claim like Sandoval Lara's "generally does not require exhaustion" because the BIA cannot review constitutional challenges.  *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006).  Thus, the Court will waive exhaustion and consider Counts One and Two of the petition.  *See Alonso*, 2025 WL 3083920, at *3–4.

**C.      Immigration and Nationality Act**

Sandoval Lara asserts that his "detention is properly governed by 8 U.S.C. § 1226(a)." (D.N. 1, PageID.11 ¶ 46)  Respondents argue that § 1225(b)(2) authorizes Sandoval Lara's detention, incorporating by reference arguments from the appellants' brief in *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771 (E.D. Mich. 2025), *appeal docketed*, No. 25-1965 (6th Cir. Oct. 27, 2025).  (*See generally* D.N. 6-2)  Respondents also argue that Sandoval Lara is detained under § 1225(b)(2) as an "arriving alien."  (*See* D.N. 6, PageID.113–14)

Although § 1225 addresses the "expedited removal of inadmissible arriving aliens," the provision that Respondents argue authorizes Sandoval Lara's detention—§ 1225(b)(2)—does not pertain to arriving aliens.  Instead, as this Court and others have made clear, § 1225(b)(2) applies where an applicant for admission is "seeking admission" to the United States.  8 U.S.C. § 1225(b)(2)(A); *see, e.g.*, *Alonso*, 2025 WL 3083920, at *6; *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *4 (W.D. Ky. Sep. 19, 2025).

Respondents' arguments as to applicants for admission who are seeking admission are nearly identical to those made in *Alonso*. The Court thus summarizes and incorporates by reference its reasoning and determination from that decision. There, the Court found that the petitioner was an applicant for admission as an "alien present in the United States who ha[d] not been admitted," 2025 WL 3083920 at *5 (quoting § 1225(a)(1)), but that he was not "seeking admission" because he resided in the United States at the time of his arrest. *See id.* at *5, *7. Likewise, Sandoval Lara is an applicant for admission because he is an "alien present in the United States who has not been admitted," § 1225(a)(1) (*see* D.N. 1-1, PageID.17), but he is not "seeking admission" under § 1225(b)(2)(A) because he lived in the United States when immigration authorities arrested him (*see* D.N. 6-1, PageID.125). *See Alonso*, 2025 WL 3083920, at *6. "[T]he category of applicants for admission covered by § 1225(b)(2) who are 'seeking admission' is meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering." *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 487 (E.D.N.Y. 2025). Sandoval Lara was arrested in the interior of the United States and thus does not fall within that category. *See Alonso*, 2025 WL 3083920, at *6.

Respondents also maintain that their position is supported by the Supreme Court's opinion in *Jennings*. (*See* D.N. 6-2, PageID.183–85) *Jennings* considered whether §§ 1225(b), 1226(a), and 1226(c) require providing periodic bond hearings to noncitizens detained under those provisions. *See* 583 U.S. at 286, 291. As Respondents note, "the Supreme Court [in *Jennings*] did not rule on whether non-admitted or inadmissible aliens fell within Section 1226(a) as opposed to Section 1225(b)(2)(A)." (D.N. 6-2, PageID.185) Whether Respondents' position is consistent with *Jennings* is thus not dispositive here. In any event, *Jennings* stated that "§ 1226 applies to aliens already present in the United States[, and §] 1226(a) creates a default rule for those aliens

by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." 583 U.S. at 303. The opinion also described § 1225(b)(1) and (b)(2) as "authoriz[ing] the [g]overnment to detain certain aliens *seeking admission* into the [United States]." *Id.* at 289 (emphasis added). Thus, the Court's reading of the relevant statutes is consistent with *Jennings*.

In accordance with its prior decisions addressing the same issue, the Court concludes that Sandoval Lara is detained under § 1226(a), not § 1225(b)(2), and is thus entitled to a bond hearing on the merits. *See Singh v. Lewis*, No. 4:25-cv-133-DJH, 2025 WL 3298080, at *5 (W.D. Ky. Nov. 26, 2025); *Lopez v. Olson*, No. 3:25-cv-654-DJH, 2025 WL 3217036, at *3 (W.D. Ky. Nov. 18, 2025); *Alonso*, 2025 WL 3083920, at *8.

**D.    Due Process**

Sandoval Lara asserts that his detention without a "meaningful, individualized bond hearing" violates due process under the Fifth Amendment. (D.N. 1, PageID.13 ¶ 55; *see id.*, PageID.12–13 ¶¶ 50–57) Respondents argue that "Section 1225(b)(2) does not afford [Sandoval Lara] the ability to obtain release on bond, and so the Due Process Clause does not either." (D.N. 6-2, PageID.186) Because Sandoval Lara is detained under § 1226(a), not § 1225(b)(2), Respondents' argument as to the due process required by § 1225(b)(2) is futile. *Singh*, 2025 WL 3298080, at *5. In the alternative, Respondents argue that "even assuming [Sandoval Lara's] argument about 8 U.S.C. § 1226 is correct," he has received the process due under that statute, "including . . . a hearing before an immigration judge." (D.N. 6, PageID.120)

The Fifth Amendment's Due Process Clause extends to all persons, including noncitizens, regardless of immigration status and in the context of removal proceedings. *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (per curiam)

(citation omitted).  To determine whether civil detention violates a petitioner's due process rights, the Court applies the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Alonso*, 2025 WL 3083920, at \*8 (citing *Barrera*, 2025 WL 2690565, at \*6).  Under that test, the Court weighs

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Barrera*, 2025 WL 2690565, at \*6 (citing *Mathews*, 424 U.S. at 335).

Like the petitioners in *Barrera* and other cases recently before the Court, Sandoval Lara "has a significant private interest in not being detained." *Id.*; *see Singh*, 2025 WL 3298080, at \*6; *Alonso*, 2025 WL 3083920, at \*9.  Moreover, "the risk of erroneously depriving [Sandoval Lara] of his freedom is high if the [immigration judge] fails to assess his risk of flight and dangerousness." *Lopez-Campos*, 797 F. Supp. 3d at 785; *see* 8 C.F.R. § 1236.1(c)(8), (d)(1).  Here, although the immigration judge issued two custody-redetermination orders (D.N. 1-3, PageID.98; D.N. 1-4, PageID.100), in both orders he denied bond on the ground that he lacked jurisdiction to consider Sandoval Lara's bond request and briefly noted in the alternative—without discussing the extensive evidence Sandoval Lara presented in support of his bond request (*see* D.N. 1-2, PageID.23–96)—that Sandoval Lara was "a danger and in the alternative a flight risk." (D.N. 1-3, PageID.98; D.N. 1-4, PageID.100)  Accordingly, the second *Mathews* factor weighs strongly in Sandoval Lara's favor because the risk of erroneously depriving him of his freedom remains high. *See Rodriguez v. Greene*, No. 4:26-cv-0333, 2026 WL 574961, at \*12 (N.D. Ohio Mar. 2, 2026) (stating that the court was "hesitant" to conclude that a bond hearing "comported with Due Process requirements" where the immigration judge's decision "contain[ed] zero reference to any record

10

or arguments put forth by either party"); *see id.* at *2 (observing that the immigration judge's order denying bond, based on a purported lack of jurisdiction, also "d[id] not identify any specific or personalized reason for the assertion that Petitioner is a danger to the community and/or a flight risk" as an alternative ground to deny bond); *see also Azalyar v. Raycraft*, 814 F. Supp. 3d 926, 934 (S.D. Ohio 2026) (concluding that a bond hearing "was not constitutionally adequate" because the immigration judge, based on a purported lack of jurisdiction, "was functionally unable to make an individualized assessment of the [alleged] need to re-detain" the petitioner (alteration in original) (internal quotation marks and citation omitted)).

Finally, the Court "recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings." *Barrera*, 2025 WL 2690565, at *7 (citation omitted). But a "routine bond hearing before an [immigration judge]" presents "minimal" fiscal and administrative burdens, and "there is an established process for doing so that [the Department of Homeland Security] can readily follow here" in which an immigration judge considers evidence as to whether a noncitizen presents a flight risk or danger. *Hyppolite*, 808 F. Supp. 3d at 493. Thus, because all three *Mathews* factors weigh in Sandoval Lara's favor, the Court concludes that his detention without a bond hearing on the merits violates due process. *See Singh*, 2025 WL 3298080, at *5–6; *Barrera*, 2025 WL 2690565, at *6–7; *Greene*, 2026 WL 574961, at *13; *Azalyar*, 814 F. Supp. 3d at 935.

11

**III.**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    The Clerk of Court is **DIRECTED** to substitute Markwayne Mullin, Secretary of the Department of Homeland Security, as a respondent in the record of this matter.

(2)    Sandoval Lara's petition for a writ of habeas corpus (D.N. 1) is **GRANTED**. Respondents are **DIRECTED** to immediately release Sandoval Lara, and, in the event he is arrested and re-detained, provide him with a bond hearing on the merits before a neutral Immigration Judge in accordance with 8 U.S.C. § 1226(a).    Respondents **SHALL** certify compliance with the Court's Order by a filing on the docket no later than **April 24, 2026**.

(3)    Upon receipt of the notice of compliance, this matter will be **CLOSED**.

April 22, 2026

**David J. Hale, Chief Judge**
**United States District Court**

12